# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **LEE ROY WARREN** | * | **CIVIL ACTION NO.  15-2350** |
| **VERSUS** | * | **MAG. JUDGE KAREN L. HAYES** |
| **JOHNQUIE SMITH, ET AL.** | * | |

### MEMORANDUM RULING[1]

Before the court are two motions for "partial" summary judgment [doc. #s 11 & 15] filed by defendants Union Parish Police Jury, Johnique Smith, Justin Bailey, Terry Wallace, and William Kersh.  For reasons detailed below, the motions are GRANTED.

### Background

On August 26, 2015, Lee Roy Warren filed the instant petition for damages in the 3rd Judicial District Court for the Parish of Union, State of Louisiana, against defendants, Union Parish Police Jury, Johnique Smith (incorrectly named as Johnquie Smith), Justin Bailey (incorrectly named as Ken Bailey), Terry Wallace, and William Kersh (incorrectly named as William Kersch).  Warren alleges that on August 27, 2014, he was arrested for disturbing the peace and taken to the Union Parish Detention Center ("UPDC"), where he began having chest pains.  Despite his complaints, he was not taken to the hospital until after he passed out.  Upon his return to the UPDC from the hospital, Warren tried to ask the officers about the status of his release.  In response, Officer Smith struck Warren and Officer Kersh maced him.  After Warren

---

[1]  With the consent of all parties, the District Court referred this matter to the undersigned magistrate judge for the conduct of all further proceedings and the entry of judgment, 28 U.S.C. § 636(c).  [doc. #s 6-7].

tried to wash the mace off, Officer Jones arrived and handcuffed Warren to the chair.  Officer Smith then chocked Warren while other officers held him.  Warren bonded out of the facility the next day.

Warren alleges that defendants intentionally and maliciously abused him "in bad faith." He further contends that defendants violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and his rights under the Louisiana Constitution. Accordingly, asserts federal civil rights claim under 42 U.S.C. § 1983, plus state law claims for assault, battery, intentional infliction of emotional distress, and/or negligence.  He seeks compensatory and punitive damages for his resulting physical injuries, serious mental anguish, and emotional distress.

On September 10, 2015, defendants removed the case to federal court on the basis of federal question jurisdiction.  On June 1, 2016, defendants filed their initial motion for partial summary judgment seeking dismissal of plaintiff's claim for inadequate medical care (at least insofar as he asserted one).  Plaintiff did not file a response to the motion, and the time to do so has lapsed.  (Notice of Motion Setting [doc. # 12]).  Accordingly, the motion is deemed unopposed.  *Id*.

On June 10, 2016, defendants filed their second, "and final," motion for partial summary judgment seeking dismissal of plaintiff's remaining excessive force claims under federal and state law.  Plaintiff filed an opposition to the motion on July 1, 2016.  Defendants filed a reply on July 11, 2016.  Thus, the matter is ripe.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is

2

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  "The court *need* consider only the cited materials, but it *may* consider other materials in the record."  Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d

3

1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[2] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

<u>Analysis</u>

I. **Inadequate Medical Care**

a) <u>Law</u>

A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment.  *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).  When a pretrial detainee initiates a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied.  *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996).  This is the same standard applied to claims brought by convicted prisoners under the Eighth Amendment.  "[T]here is no significant distinction between

---

[2]  I.e., beyond doubt.

4

pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).

To establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). More specifically, deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "[A] delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm." *Gregory v. McKennon*, 2011 WL 2473714 (5th Cir. June 22, 2011) (unpubl.) (citation and internal quotation marks omitted).

Prisoners are not entitled to the "best medical care money can buy." *See Mayweather v.*

5

*Foti,* 958 F.2d 91 (5th Cir. 1992); *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981).  In *Woodall,* the Fifth Circuit stated that the test in balancing the needs of the prisoner versus the needs of the detention center is one of medical necessity, not of desirability.  *Woodall, supra.*  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.

      b)    <u>Defendants' Uncontested Material Facts</u>

Defendants' motion for partial summary judgment is supported by a Town of Farmerville arrest report, Union General Hospital medical records, a UPDC inmate release order, and excerpts from plaintiff's deposition.  (Defs. MPSJ [doc. # 11]).  Defendants incorporated this evidence into their statement of material facts, which plaintiff did not controvert through his own statement supported by competent summary judgment evidence.  Accordingly, defendants' statement of material facts is deemed admitted,[3] and substantially incorporated herein, as follows:

1.

On August 27, 2014, at around 10:45 a.m., the Farmerville Police Department arrested plaintiff and charged him with disturbing the peace.  *See* Farmerville Police Report;  Defs. 1st MPSJ, Exh. 5.  Plaintiff did not complain of chest pains to the Farmerville Police.  (Pl. Depo., pg. 75; Defs. 1st MPSJ, Exh. 17).

2.

After his arrest, plaintiff was taken to the UPDC and placed in a holding cell.  *Id.*  Thereafter, he complained that he was experiencing chest pains.  *Id.*, at pg. 77.

---

[3]  Fed.R.Civ.P. 56(e)(2) and LR 56.2 (material facts in the moving party's statement are deemed admitted unless controverted by non-movant's statement).

3.

Plaintiff voiced his complaint about his chest pains to another inmate in the holding cell who, in turn, advised UPDC Officers.  *Id*.

4.

Plaintiff was able to take a nitroglycerin pill that he had in his pocket.  In addition, officers uncuffed him, removed him from the holding cell, and placed him in the front office near a fan.  *Id*., at pgs. 81-83.

5.

When plaintiff's chest pains did not subside, UPDC officers permitted him to take a second nitroglycerin pill.  *Id*.

6.

UPDC officers later returned plaintiff to the holding cell, whereupon he passed out.  *Id*., pgs. 83-86.

7.

After plaintiff passed out, UPDC personnel immediately assisted him from the ground and rushed him via ambulance to nearby Union General Hospital ("UGH").  *Id*., pgs. 85-86.

8.

When plaintiff arrived at UGH, he reported that his pain was only "2 out of 10." *Id*., pgs. 89-90; Pl. UGH Med. Record, Defs. 1st MPSJ, Exh. 7).  Moreover, he was not in any "acute distress" and was "alert, awake and comfortable" upon arrival.  *Id*.  He later confirmed that when he arrived at UGH, he was "better."  (Pl. Depo., pgs. 91-92).

9.

7

Plaintiff's UGH medical records reflect that he "ha[d] experienced similar episodes in the past, a few times, today's symptoms are similar, and the symptoms today are exactly the same, to previous mi 2009 and 2007, to when the patient was apparently diagnosed with mi."  (UGH Med. Record).

10.

While at UGH, plaintiff became belligerent, started making accusations, used profanity, talked loudly, and was disturbing other patients.  *Id*.  Accordingly, the police were contacted.  *Id*.

11.

Plaintiff eventually left UGH (several hours after he arrived) against the medical advice of the attending physician(s).  *Id*., *see also* Pl. Depo., pgs. 93-97.

12.

After his self-discharge from UGH, plaintiff was transported back to the UPDC.  *Id*., pgs. 98-100.

13.

Plaintiff did not seek any further medical care or treatment at any point before he bonded out of the UPDC the next day.  *Id*., pgs. 122-123.

c)      <u>Discussion</u>

In the absence of any argument or evidence by plaintiffs, the court readily concludes that defendants were not deliberately indifferent to plaintiff's serious medical needs.  Indeed, it is questionable whether plaintiff intended to advance a claim for inadequate medical care at all. The only aspect of defendants' conduct that conceivably *could have* formed the basis for a claim for inadequate medical care was defendants' decision to accommodate plaintiff's complaints of

chest pain at the facility with nitroglycerine tablets and a fan, rather than immediately transporting him to the hospital.  Be that as it may, defendants' course of conduct does not evince deliberate indifference.  Moreover, insofar as plaintiff *might have* argued that defendants were negligent in not immediately transporting him to the hospital, he has not demonstrated any measurable damages as a result of the delay.

## II.   Excessive Force and Compliance-Related Claims

### a)   Defendants' Uncontested Material Facts

Defendants' motion for summary judgment is supported by Union General Hospital ER records, restraint chair photos, a UPDC booking form and photo, UPDC inmate release order, Union General Hospital medical records, Veterans Administration Hospital records, excerpts from plaintiff's deposition, affidavit of Johnique Smith, UPDC unusual occurrence report, UPDC policy on use of force, affidavit and report of George Armbruster, and an affidavit and report by Douglas Brown, M.D.  (Defs. MPSJ [doc. # 15]).  Defendants incorporated this evidence into their statement of material facts, which plaintiff largely conceded and adopted in his own Statement of Material Facts.  [doc. #s 15 & 19].  For those facts that he did not adopt, however, plaintiff did not controvert them with any competent summary judgment of his own.  Accordingly, defendants' statement of material facts is deemed admitted,[4] and substantially incorporated herein,[5] as follows:

---

[4] Fed.R.Civ.P. 56(e)(2) and LR 56.2 (material facts in the moving party's statement are deemed admitted unless controverted by non-movant's statement).

[5] The court has deleted several irrelevant provisions, and declined to consider or modified several statements that were not supported by the cited evidence.

1.

Upon plaintiff's return to the UPDC on the evening of August 27, 2014, he was acting belligerent and using loud, profane, and abusive language towards the UPDC Officers.  (Aff. of Johnique Smith; Defs. 2nd MPSJ, Exh. 18).

2.

When placed in a holding cell, plaintiff continued banging, hitting, and kicking the walls of the holding cell.  *Id.*

3.

UPDC officers ordered plaintiff to calm down and lower his voice on numerous occasions.  Plaintiff, however, refused to comply.  *Id.*; Pl. Depo., pgs. 102-103, Defs. MPSJ Exh. 17.

4.

While seated on a bench in the holding cell, plaintiff called Officer Smith a derogatory, racial slur.  (Pl. Depo., pgs. 102-103).[6]

5.

Thereafter, in an attempt to force plaintiff to stop yelling, acting belligerent, and causing a disturbance, UPDC Sgt. Kersh administered a one (1) second burst of OC spray in order to calm him down.  (Smith Affidavit; UPDC Unusual Occurrence Report, MPSJ, Exh. 19).[7]

---

[6]  According to plaintiff, he said, "Man, have you done lost your mind?  What's wrong with you, n *****? . . . N******, you out of your mind?"  *Id.*  Plaintiff later explained that it is a "common expression of black folks.  We call each other n****** all the time."  *Id.*, pg. 106.

[7]  Kersh explained in the Unusual Occurrence Report that "Warren had become verbally abusive and refused to comply with orders from officers."  *Id.*  When plaintiff asked Kersh why he sprayed him, Kersh replied, "You don't cuss my officers."  (Pl. Depo., pg. 102).  Plaintiff

6.

After being administered the OC spray, plaintiff washed his face off with water.  (Pl. Depo., pg. 107).

7.

Following the administration of the one (1) second burst of OC spray, plaintiff continued to act in a belligerent manner.  Accordingly, defendants placed plaintiff in a restraint chair. (Smith Affidavit).[8]

8.

The UPDC officers use of the restraint chair was consistent with the UPDC Policy on Use of Force.  (Armbruster Affidavit and Expert Report, MPSJ, Exh. 21; UPDC Use of Force Policy, MPSJ, Exh. 20).[9]

9.

Plaintiff agreed that an inmate should not yell, scream, or otherwise cause a disturbance in a jail because "other inmates may start participating or you're inciting a riot or whatever . . . " (Pl. Depo., pgs. 52-53).

---

added that when Kersh sprayed him with mace, he stated, "[w]e done heard enough of your s*** today."  (Pl. Depo., pg. 103).

[8]  Plaintiff remained in the restraint chair for about two to three hours.  (Pl. Depo., pgs. 114-115).

[9]  On May 20, 2016, George P. Armbruster, Jr. reviewed the evidence of record, including plaintiff's deposition, and opined that the UPDC's handling of plaintiff during the period at issue complied with generally accepted guidelines of the law enforcement and corrections profession. *Id*.  Armbruster has 30 years of experience in law enforcement, criminal justice, and the security field.  *Id*.  He has been accepted as an expert witness in state and federal courts in the areas of arrest techniques, police procedures, police training, corrections issues, and use of force.  *Id*. Plaintiff did not contest his qualifications or the bases for his opinion.

10.

Plaintiff further conceded that when "an inmate or a prisoner is in a cell and is screaming and hollering . . ." the situation demanded attention.  *Id*., pg. 67.

11.

Plaintiff also agreed that prison employees are required to and should keep order in a prison.  *Id*.

12.

Plaintiff knew from personal experience that an inmate causing a disturbance made him feel "insecure and unsafe."  *Id*. at pg. 68.[10]

13.

Plaintiff raised his voice at the UPDC officers.  *Id*. at pg. 60.[11]

14.

Plaintiff admitted that his behavior at the jail on August 27, 2014, was causing a disturbance.  *Id.*, at pg. 109.

\*          \*          \*

16.

After bonding out of the UPDC on August 28, 2014, plaintiff did not immediately seek

---

[10]  The court did not consider this statement of material fact.  Defendants did not adduce page 68 of plaintiff's deposition.

[11]  The court did not consider this statement of material fact.  Defendants did not adduce page 60 of plaintiff's deposition.

medical attention; rather, he took care of some personal business.  *Id*., pgs. 129-136.[12]

17.

On the afternoon of his release, at about 5:30 p.m., plaintiff went to the hospital and presented with complaints of lower back pain and left knee tenderness.  *Id*.; UGH Records, Defs. MPSJ, Exh. 13.

18.

While at the Union General Hospital on August 28, 2014, plaintiff never complained about a bruise on his face, nor was any such injury reported in the UGH medical records.  *See* UGH Records.

19.

On August 28, 2014, upon examination, UGH physicians found plaintiff to be negative for any type of injury or complaint of pain with the exception of contusions on the left knee and low back.  *Id*.; Pl. Depo., pgs. 138-139.

20.

Plaintiff admitted that the bruise on his knee and back resolved about three (3) weeks later.  (Pl. Depo., pg. 152).

\*          \*          \*

24.

Plaintiff admitted to experiencing ongoing anger problems that predated the period at issue.  *Id*., pg. 149.

---

[12]  Plaintiff stated that he sat at home nursing his wounds.

25.

On February 12, 2015, plaintiff was involved in an automobile accident, where his head hit the steering wheel and headrest, and his legs struck the dashboard.  (Carpenter Health Clinic Exam. Notes; Defs' MPSJ, Exh. 16).

26.

The UPDC officers' actions in handling and restraining plaintiff on August 27, 2014, complied with generally accepted guidelines of the law enforcement and corrections profession. (Armbruster Affidavit and Expert Report).

27.

Orthopedic surgeon, Douglas Brown, M.D., reviewed extensive records from this case, and discounted any significant injury caused by the alleged events on August 27, 2014.  *See* Affidavit and Report of Douglas Brown, M.D., Defs. MPSJ, Exh. 22.

    b)    <u>Federal Claims</u>

        i)    *Individual Defendants*

A pretrial detainee's excessive force claim derives from the Fourteenth Amendment. *Benoit v. Bordelon*, 596 Fed. Appx. 264, 267 n2 (5th Cir.2015) (citation omitted).  However, whether the right arises from the Eighth or the Fourteenth Amendment, the standard is the same. *Id*.[13]  When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core judicial inquiry is

---

[13]  Nevertheless, "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose."  *Hare v. City of Corinth,* 74 F.3d 633, 640 (5th Cir.1996) (en banc).

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*,  503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986)); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).  However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Id.* (citation omitted).  The Eighth Amendment also does not protect against "de minimis" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind."  *Id.* (citation and internal quotation marks omitted).[14]  Though

> [t]he focus of this standard is on the detention facility official's subjective intent to punish, intent is determined by reference to the well-known *Hudson* factors — the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."

*Cowart v. Erwin*, 2016 WL 4784010, ___ F.3d ____, *5 (5th Cir. Sept. 13, 2016) (citation omitted).[15]

The court discerns three instances of use of force by UPDC officers in this case.  First, plaintiff alleges that Officer Smith punched him on the left side of his face.  (Pl. Dep., pg. 103).  Defendants make no effort to justify the punch; instead, Smith denies that it occurred.  (Smith Affidavit).  The court, of course, must construe this disputed issue of material fact in favor of plaintiff.  Nonetheless, plaintiff has not adduced any evidence of more than *de minimis* force and injury.  While bruising may suffice to support an excessive force claim stemming from an unprovoked punch, *see Cowart, supra*, there is no evidence here that plaintiff suffered so much

---

[14]  The injury must be more than de minimis, but not necessarily significant.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

[15]  Furthermore, "the extent of the injury may supply insight as to the amount of force applied."  *Id.*

as a bruise from the punch.  Indeed, plaintiff noted in his brief that there was no sign of any injury to his head.  (Pl. Opp. Memo., pg. 3).  Moreover, plaintiff did not so much as mention the punch in response to defendants' motion for summary judgment.  *See* Pl. Opp. Memo.

Plaintiff instead focuses his excessive force claim on the second and third instances of use of force, i.e., the implementation of mace and plaintiff's placement in a restraint chair.  In his brief, plaintiff conceded that he was making a "disturbance" by yelling, cursing and kicking the walls of the concrete and metal cell.  (Pl. Opp. Memo., pg. 3).[16]  He maintains, however, that the officers' actions in pepper-spraying him and placing him in a restraint chair were objectively unreasonable because he was in a segregated cell and presented no security threat whatsoever. *Id*., pg. 4.

In contrast, plaintiff agreed in his deposition that if an inmate or prisoner were screaming and hollering, then the issue required attention.  (Pl. Depo., pg. 67).  Moreover, defendants' expert opined that the actions of the UPDC officers complied with generally accepted guidelines of the law enforcement and corrections profession.  In fact, mace does not constitute excessive use of force, when, as here, it is employed in response to an inmate's refusal to cease disruptive behavior that interferes with the facility's safety – even where the inmate is restrained inside of his cell. *Scott v. Hanson*, 330 Fed. Appx. 490, 491 (5th Cir.2009).  The Fifth Circuit also has recognized that use of a restraint chair does not violate constitutional norms where, as here, it is reasonably related to a legitimate governmental objective such as the cessation of destructive or disruptive behavior. *See Blakeney v. Rusk Cty. Sheriff*, 89 Fed. Appx. 897, 899 (5th Cir.2004)

---

[16]  Albeit, in his deposition, plaintiff stated that he did not holler and scream until *after* he was maced.  (Pl. Depo., pg. 106).

(pretrial detainee placed in restraint chair for 20 hours).

The court recognizes that the reasonableness of defendants' actions is a fact-dependent inquiry.  In this case, however, plaintiff concedes that the facts are not generally disputed.  (Pl. Opp. Memo., pg. 3).  Moreover, the evidence presented establishes that he suffered no more than bruises to his knee and lower back as a result of defendants' compliance measures.[17] Accordingly, upon review of the evidentiary record, and the arguments presented, the undersigned finds that no reasonable trier of fact could find that defendants violated plaintiff's constitutional right against excessive force.  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party).  "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."  *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir.2010) (citations and internal quotation marks omitted).

ii)  *Official Capacity Claims*

Defendants contend that plaintiff sued the individual defendants in their official capacity only.  They further argue that because a suit for damages against a state official in his official capacity is a suit against the state, the claim is barred by the Eleventh Amendment.  Defendants then deftly segue into a brief discussion on qualified immunity.  (Defs. Memo., pgs. 19-20).

Defendants' argument is flawed, in several respects.  First, in the caption of his

---

[17]  Dr. Brown found no orthopedic or medical verification for plaintiff's complaints regarding an alleged injury on August 27, 2014.  (Dr. Brown Report; Defs. 2nd MPSJ [doc. # 15-15]).

17

complaint, plaintiff sued Smith, Baily, Wallace, and Kersh "**individually**, and in their capacities as correctional officers of the Union Parish Correctional Center and the Union Parish Police Jury."   (Petition) (emphasis added).   Second, although it is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent," and therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity,"[18] it is equally clear that the Union Parish Policy Jury is a political subdivision subject to liability and monetary damages under § 1983 – not an arm of the state entitled to Eleventh Amendment immunity.  *See United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 479 (5th Cir.2007) (parish not entitled to Eleventh Amendment immunity); *Am. Tel. & Tel. Co. v. Madison Par. Police Jury*, 465 F. Supp. 168, 170 (W.D. La. 1977) (because the Louisiana Department of Public Works was entitled to Eleventh Amendment immunity, the award operates only against the Madison Parish Police Jury).

Therefore, plaintiff's official capacity claims against the individual defendants are not barred by the Eleventh Amendment.  Nevertheless, when, as here, plaintiff asserts a § 1983 claim against the local government entity, then an official capacity claim against the entity's commissioners or officials is redundant, and subject to dismissal as such.  *Hicks v. Tarrant Cnty. Sheriff's Dep't*, 352 F. App'x 876, 877 (5th Cir. 2009) (citations omitted) (because local government entity was a named defendant, district court did not err in dismissing official capacity claims against its commissioners); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268 (5th Cir.2015) (claim against mayor in his official capacity was treated as claim against the

---

[18]  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).

18

municipality itself).

Finally, the court notes that the qualified immunity defense applies only to suits against government officials in their *individual* capacities.  *Walker v. Howard*, 517 Fed. App'x 236, 237 (5ᵗʰ Cir. 2013).  Thus, the individual defendants could not invoke qualified immunity in response to supposed official capacity claims against them.  In any event, having determined that the individual defendants did not violate plaintiff's constitutional rights, *see* discussion, *supra*, analysis of the qualified immunity defense proves unnecessary. *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir.2009).

### iii)    Union Parish Police Jury

To impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity.[19]  *Kohler v. Englade*,  470 F.3d 1104, 1115 (5ᵗʰ Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)).  "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."  *McConney v. City of Houston*,

---

[19]  Many courts, including this one, have recognized that the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff, and therefore, parishes cannot be vicariously liable under state law or pursuant to *Monell* for the actions of the sheriff and his or her deputies.  *See Quatrevingt v. Thibodeaux*, Civ. Action No. 10-4047, 2011 WL 2182104, at *2 (E.D. La. May 2, 2011), R&R adopted, 2011 WL 2182069 (E.D. La. June 2, 2011); *Kraft v. Lee*, Civ. Action No. 2006 WL 3395592, at *2 3 (E.D. La. Nov. 22, 2006); and *Broussard v. Boudoin*, Civ. Action No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004); *see also Jordan v. Prator*, Civ. Action No. 11-0723, 2013 WL 4094336, at *4 (W.D. La. Aug. 13, 2013) (sheriff is an autonomous local government official separate and apart from the parish he serves; therefore suit against sheriff is a suit against a political subdivision:  the sheriff's office).  Defendants, however, do not contest that the Union Parish Policy Jury is the proper entity for *Monell* liability.

863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation by defendants in their individual capacities.  *A fortiori*, he has not identified a precipitating unconstitutional custom or policy enacted by the government entity.  *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's constitutional rights, neither did the city).

Insofar as plaintiff seeks to hold defendants liable in their supervisory capacities, the court notes that supervisors can be held liable when the "enforcement of a policy or practice results in a deprivation of federally protected rights."  *Bustos, supra* (citation omitted).  Again, however, because plaintiff has failed to allege or establish a constitutional violation by the individual(s) directly involved in the challenged activity, he cannot show that any supervisor implemented a policy or custom that violated his constitutional rights.  *Bustos*, 599 F.3d at 468.

c)      State Law Claims

i)      *Constitutional Claim*

Article 1, Section 5 of the Louisiana Constitution provides that, "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."  LA. CONST. ART. I, § 5.  At least one court in this district has held that Article 1, Section 5 of the Louisiana Constitution may support a damages claim for excessive force.  *See Bender v. Town of Homer*, Civ. Action No. 10-1496, 2011 WL 1436641, at *7 (W.D. La. Apr. 13, 2011).  To the extent such a claim exists, it necessarily fails here, where the undersigned has determined that plaintiff does not enjoy a viable excessive force claim against defendants under federal law.  *See* discussion, *supra*

20

    *ii)*      *Assault and Battery*

Under Louisiana law, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So.2d 943, 949 (La. 2003) (citation omitted).  Further, "[a]n assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." *Harger v. City of W. Monroe*, Civ. Action No. 14-0976, 2014 WL 3828375, at *3 n.3 (W.D. La. Aug. 4, 2014) (citation omitted).  Under Louisiana law, "the tort of battery, when raised against a law enforcement officer acting in the course of employment, requires a showing that the law enforcement officer acted with unreasonable or excessive force." *Poole v. Russell*, Civ. Action No. 14-0611, 2016 WL 6082041, at *7 (W.D. La. Oct. 18, 2016) (citations omitted). Moreover, Louisiana's excessive force tort closely tracks its federal constitutional counterpart. *Id*. (citing *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977)).

Again, having determined that plaintiff does not enjoy a viable excessive force claim against defendants under federal law, the court necessarily reaches the same conclusion as to plaintiff's state law assault and battery claims.  *See* discussion, *supra*

    *iii)*    *Intentional Infliction of Emotional Distress*

In defining conduct prohibited by this tort, the Supreme Court has remarked that,

> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be

21

left through which irascible tempers may blow off relatively
harmless steam . . .

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

In response to defendants' motion, plaintiff has not identified or advanced any verbal encounter
with defendants that is sufficiently outrageous to support a claim for intentional infliction of
emotional distress.  Accordingly, the claim fails.

> iv)     Negligence

To determine whether a plaintiff should recover on a negligence claim, Louisiana courts
employ a duty-risk analysis.  *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d
87, 101 (La. 2005) (citation omitted).  The duty/risk analysis also applies to negligent use of
force claims.  *N.S. v. City of Alexandria*, 919 F. Supp.2d 773, 781 (W.D. La. 2013) (citation
omitted).  Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific
> standard (the duty element); (2) proof that the defendant's conduct failed to
> conform to the appropriate standard (the breach element); (3) proof that the
> defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the
> cause-in-fact element); (4) proof that the defendant's substandard conduct was a
> legal cause of the plaintiff's injuries (the scope of liability or scope of protection
> element); and (5) proof of actual damages (the damages element).

*Long, supra*.

The breach factor of the duty/risk analysis contemplates the reasonableness of the action
taken.  *N.S., supra* (citation omitted).  Here, the court's determination that defendants' use of
force was not excessive or unreasonable dictates a finding that the officers were not negligent.
Plaintiff does not argue to the contrary.

## Conclusion

For the above-assigned reasons, the court finds, pursuant to Rule 56 of the Federal Rules
of Civil Procedure, that there is no genuine dispute as to any material fact and that defendants are
entitled to judgment as a matter of law, dismissing all claims against them.  Accordingly,

defendants' motions for partial summary judgment [doc. #s 11 & 15]  are hereby GRANTED.

In Chambers, at Monroe, Louisiana, this 9th day of November 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE